## THOMAS ANDREW MICHAEL *v.* STATE OF MARYLAND

[No. 74, Initial Term, 1967.]

*Decided May 8, 1967.*

The cause was submitted to ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and PROCTOR, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Julius E. Schindler* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Thomas B. Finan, former Attorney General, Donald W. Mason, State's Attorney for Allegany County,* and *J. Frederick Sharer, Deputy State's Attorney for Allegany County,* on the brief, for appellee.

PER CURIAM.

Appellant was convicted on April 1, 1966 by the Circuit Court for Allegany County, sitting without a jury, of assault with intent to have carnal knowledge of a female child under the age of fourteen years. On appeal from that judgment, appellant's sole contention is that he was so intoxicated at the time of the crime as to be incapable of forming the criminal intent necessary to support his conviction.

The evidence adduced at the trial showed that approximately 9:00 p.m. on the evening of December 23, 1965, Mrs. Norma Gabbert left her home to visit a friend, leaving her four children in the care of a teenage male babysitter. At her friend's house, Mrs. Gabbert was joined by appellant and one Riggleman, both of whom were drinking. Mrs. Gabbert, appellant and Riggleman then· returned to the Gabbert home. Appellant remained in the Gabbert house with the babysitter, who was asleep, while Mrs. Gabbert and Riggleman went to the store. At that time, both a television set and a record player were turned on. Mrs. Gabbert's daughter, Dianne, then three years of age, was sleeping on a couch in the same room where appellant was sitting. The other three Gabbert children were asleep on the second floor of the home.

The evidence further indicated that appellant carried Dianne upstairs to a bedroom where her two brothers were sleeping; that one of these children, Charles, age seven, was awakened by Dianne crying; that appellant had removed Dianne's pants and that when Charles tried to put them back on Dianne, the appellant knocked him down. Charles testified that appellant placed Dianne on his bed and was on his stomach on top of her and trying to hug her. He further testified that he and his younger brother remained in the bedroom hitting appellant on the back until finally appellant ordered the two children to leave the room. Shortly thereafter, Mrs. Gabbert returned home and, upon hearing Dianne crying, ran upstairs and discovered appellant lying on the bed on top of her. Mrs. Gabbert testified that she pulled the appellant off the child, observed that she did not have any underpants on, that her skirt and blouse were pulled up over her waist, and that the appellant's pants were open and his privates out on the child's leg. She testified that appellant tried to cover up the front of his pants and his exposed penis. Mrs. Gabbert took Dianne downstairs. The babysitter was still asleep.[1] Appellant also returned to the first floor where Mrs. Gabbert hit him in the head with a glass. Appellant threatened to have Mrs. Gabbert arrested for striking him

---

1. There is evidence in the record that the babysitter did not hear well and this perhaps explains his failure to wake up when the assault occurred.

but, according to her testimony, appellant said, "* * * if you keep your mouth shut I will keep mine."

The appellant testified that he was an excessive drinker and that on the day of the crime he shared three fifths of whiskey with some of his friends, drank some beer and also bought a half pint of whiskey. The arresting police officers testified that they arrested appellant between 2:00 a.m. and 2:10 a.m. (approximately two hours after the assault took place), that the appellant was drunk, that he was staggering and very wobbly on his feet, that his face was red, and that his eyes were bloodshot.

In Maryland, as elsewhere, voluntary drunkenness is generally not a defense to crime. *Clark v. State,* 236 Md. 648 (1964); *Martin v. State,* 228 Md. 311 (1962); *Lipscomb v. State,* 223 Md. 599 (1960); *Saldiveri v. State,* 217 Md. 412 (1958); 7 M.L.E. *Criminal Law,* Section 23; 22 C.J.S. *Criminal Law,* Section 66. It may, however, be considered by the triers of fact as bearing upon the state of mind of the accused. *Stansbury v. State,* 218 Md. 255 (1958). Where a particular motive, intent or purpose is an essential element of a crime, drunkenness may be considered in determining whether or not the accused lacked the mental capacity to form the requisite motive, intent, or purpose, and if a sufficient mental incapacity is found to exist drunkenness may constitute a defense to the particular offense charged. *People v. Guillett,* 69 N. W. 2d 140 (Mich., 1955). See also *McIntyre v. State,* 379 P. 2d 615 (Alaska, 1963); *Yarber v. State,* 179 N. E. 2d 882 (Ind., 1962); *State v. French,* 172 N. E. 2d 613 (Ohio, 1961), *cert. denied* 366 U. S. 973 (1961); Perkins, *Criminal Law,* p. 789 (1957); Annot., 8 ALR 3d 1236 (1966); 22 C.J.S. *Criminal Law,* Section 68(a) (1961). In *Chisley v. State,* 202 Md. 87, 107-108 (1953), the Court of Appeals recognized that where there is evidence that the accused was intoxicated at the time of the alleged killing, the jury must be instructed as to the necessity for considering the effect of such intoxication on the formation and existence of wilfullness, deliberation, and premeditation in determining whether the accused was guilty of first degree or second degree murder.

The crime of assault upon a woman child under the age of 14, with intent to carnally know her, requires the proving of

three elements: (1) the assault, without regard to the degree of violence used; (2) the intent to carnally know; and (3) that the age of the girl be under 14. See *Swift v. State,* 224 Md. 300 (1961) ; *Cooper v. State,* 205 Md. 162 (1954). It is therefore necessary that the appellant's drunkenness be considered in reaching a factual determination on the issue of his criminal intent. *Stansbury v. State, supra; Beall v. State,* 203 Md. 380, 101 A. 2d 233 (1953).

The accused must do more than simply raise the issue of drunkenness to establish a defense. *State v. French, supra.* But cf. *Edwards v. United States,* 172 F. 2d 884 (D. C. Cir. 1949) ; *Womack v. United States,* 336 F. 2d 959 (D. C. Cir. 1964). He must persuade the triers of fact that, under the circumstances, he was so intoxicated as to be incapable of entertaining the specific mental intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted. To establish a valid defense, the appellant must show that he was so intoxicated that he was robbed of his mental faculties, and he will be considered criminally responsible as long as he retains control of his mental faculties sufficiently to appreciate what he is doing. See *Beall v. State, supra* at p. 386; *Stansbury v. State, supra; Chisley v. State, supra;* 1 Wharton, *Criminal Law and Procedure,* Section 48 (12th ed., 1957) ; 2 Underhill, *Criminal Evidence,* Section 471 (5th ed.) ; Clark and Marshall, *Crimes,* Section 95 (a) and (c) (5th ed., 1952) ; 22 C.J.S., *Criminal Law,* Section 68 (b), p. 220.

The issue in this case is thus not whether the appellant was drunk at the time of the commission of the alleged crime. It is whether the appellant was so intoxicated as to be incapable of forming the requisite intent when the act was committed. The trier of fact expressly found that appellant's actions were such as to show that he was not so intoxicated as to be incapable of forming the intent to commit the crime with which he was charged. More specifically, the trial judge, in arriving at his judgment, considered the act of appellant in carrying the child upstairs, the placing of the child on the bed, the opening of his own clothing, getting on top of the child, and also his parting

remarks to the victim's mother indicating his guilty knowledge and cognizance of the events which had transpired.

On the record before us, we could not hold that the trial judge's finding of guilt was erroneous, still less that it was clearly erroneous. Unless it were so, we could not set it aside. *Jones v. State,* 242 Md. 323 (1966); *Barefoot v. State,* 222 Md. 67 (1960); Maryland Rule 1086.

*Judgment affirmed.*