## AVEY v. STATE OF MARYLAND

[No. 152, September Term, 1967.]

*Decided April 2, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, BARNES, MCWILLIAMS and SINGLEY, JJ.

*Karl G. Feissner,* with whom were *William L. Kaplan* and *Alpern & Feissner* on the brief, for appellant.

*David T. Mason, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

On 29 June 1967 we ordered the writ of certiorari to be issued to the Court of Special Appeals "for the sole purpose of reviewing the correctness of * * * [its] holding * * * that there was no prejudice to the accused [Avey] in the trial court's instruction or lack of instruction to the jury on the point of the effect on and relation of the intoxication of * * * [Avey] to his specific intent in the commission of certain of the crimes of which he was accused."

We shall state only those facts which are necessary for our consideration of the single, narrow issue here presented. A more complete statement will be found in *Avey v. State,* 1 Md. App. 178, 228 A. 2d 614 (1967).

It was about 2:00 a.m. on 26 January 1965 when Lt. Thornberry of the Prince George's County Police Department noticed a broken pane in the door of a shopping center delicatessen. He and another officer went in to investigate. When they

turned on the lights Avey stepped out of the men's room and said, "Okay, copper, let's see how good you are. Kill me." In the ensuing gun fight both officers were wounded. Avey, apparently unscathed, escaped. He was arrested about 6 hours. later and when asked why he shot the officers he said "because I was drunk."

Indicted for assault with intent to murder in the case of each policeman and storehouse breaking, he pled not guilty generally and not guilty by reason of insanity. His trial began before Parker, J., and a jury, on 13 October 1965.

Avey testified that he and a woman named Bonnie Caldwell had been "riding around" and drinking during the 5 or 6 hours. before the shooting. He said they consumed a "pint of moonshine" and 18 to 20 cans of beer. Avey guessed he had 9 or 10 cans, "maybe more." At one point in his testimony he described his condition as "quite intoxicated." Later he testified he "wouldn't say quite intoxicated" but he would say he "was still under the influence." At another point he guessed he was "pretty well plastered."

In the course of his charge to the jury the trial judge gave the following instruction:

> "Now, as to the assault with intent to murder and with the intent to maim, I instruct you in an advisory capacity that you may properly consider the state of mind of the defendant at the time of the shooting. I say that because of the type of evidence that has been introduced in this case."

Counsel for Avey, at the conclusion of the charge, made the statement which follows and which we shall treat as an exception:

> "If Your Honor please, as to the question of specific intent, we would ask the Court to advise the jury this too is the State's burden and it is not the defendant's. While Your Honor did state that the jury can consider the evidence that came from the stand, you didn't make any specific mention of mental condition relating to the sanity or whether he had been drinking."

Judge Parker noted his exception but he thought his instruction was adequate under the circumstances.

Avey was convicted of assault with intent to murder in both cases, and of the crime of storehouse breaking as well. He was sentenced to serve two consecutive 12 year terms in the Maryland Penitentiary, and one 18 month term to run concurrently with the first 12 year term.

The Court of Special Appeals, affirming the conviction, said:

> "Avey objects to the charge to the jury * * * [b]e-
> cause the court['s] refus[al] to instruct the jury of
> the fact that the appellant had been drinking may have
> some effect as to whether he could form the specific
> intent to commit the crimes * * *.
>
> * * *
>
> "The majority rule is that where intoxication ex-
> ists to a degree that it deprives the accused of his ca-
> pacity to form a specific intent, he cannot be convicted
> of a crime requiring that intent, e.g. assault with in-
> tent to kill or maim, 22 C.J.S. Criminal Law Section
> 68. Compare *Clarke v. State,* 236 Md. 648, 207 A. 2d
> 94, *Lipscomb v. State,* 223 Md. 599, 165 A. 2d 918.
> We consider the court's instruction, however, adequate
> under the majority rule." *Id.* 1 Md. App. at 188-89.

We think the Court of Special Appeals has stated correctly the general rule. To the same effect see *Beall v. State,* 203 Md. 380, 101 A. 2d 233 (1953); *Chisley v. State,* 202 Md. 87, 95 A. 2d 577 (1953); *Michael v. State,* 1 Md. App. 243, 229 A. 2d 145 (1967). We do not agree, however, that the instruction given by the trial judge was adequate. It should be observed that much emphasis was placed upon the question of Avey's sanity. He filed a plea of insanity. He spent 7 months under observation at the Clifton T. Perkins State Hospital. Dr. John M. Hamilton, the superintendent of Perkins, testified at some length in respect of the tests administered to Avey, his own findings, and the findings of his staff. Dr. Schnoor, a psychiatrist employed by Avey, described fully his examination of Avey and his appraisal of his mental condition. Judge Parker began his charge to the jury by fully instructing them how they should

go about determining the issue of Avey's sanity. Then after giving the jury the definitions of storehouse breaking and of the degrees of murder and assault he made the statement the Court of Special Appeals thought was adequate. It will be noted that there is nothing in Judge Parker's statement to suggest he had in mind Avey's intoxication vel non or, assuming the jury found it to be a fact, how it might impinge upon their determination of his guilt or innocence of the crime of assault with intent to murder. They might well have thought that by the use of the expression "state of mind" the court was again referring to the issue of sanity. That the words "type of evidence" were intended to refer to the psychiatric testimony only would have been a natural assumption on the part of the jury for the quite obvious reason that for every page of the record extract in which drinking is mentioned there are 10 pages given over to psychiatric testimony.

We note with regret the failure of Avey's counsel to request, before the charge to the jury, an instruction on the question whether Avey was intoxicated to such a degree that he lacked the capacity to form a specific intent to murder. Such a request would have better informed the trial judge what counsel had in mind than the statement we have elected to treat as an exception, which, to be blunt about it, lacks the clarity and precision such an occasion would seem to require. We can understand, therefore, how the full import of what counsel claims now that he meant then might have escaped the trial judge. Nevertheless, the fact remains that the jury was not adequately instructed and, as a consequence thereof, the State's Attorney, in the opening argument, was able to say that "drunkenness under our law is no defense, no defense to a crime such as this." At the conclusion of the State's opening argument counsel for Avey "move[d] for a mistrial" citing the State's "erroneous statement of the law" and insisting that "drunkenness is a defense to a specific intent." The motion for a mistrial was denied. In his closing argument the State's Attorney told the jury that "the law on the subject is clear." The general rule, "that voluntary drunkenness is no excuse for a crime" he said, applies to homicide. He added, without in any respect indicating the source or the context thereof, the following:

"The Court of Appeals [this Court] says, "Likewise without merit is the appellant's contention he was too intoxicated to form the necessary intent to kill.' "

For the reasons stated the judgments in Criminal Trials Nos. 5455 and 5456 will be reversed and the cases will be remanded for a new trial.

*Judgments in criminal trials Nos. 5455 and 5456 reversed. Cases remanded for a new trial.*